**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KELLY KJELSTROM,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN MEDICAL RESPONSE WEST, et al.,<br><br>Defendants. | Case No. 1:22-cv-00513 JLT FJS<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 44) |

American Medical Transportation West (AMR), the defendant, moves for summary judgment in this case of alleged workplace discrimination filed by its employee, Kelly Kjelstrom. (Doc. 44.) The motion is **GRANTED**. AMR has demonstrated that the material facts are not in dispute and that it is entitled to judgment as a matter of law.

**UNDISPUTED FACTS**

AMR makes several arguments in support of its motion, and the parties discuss a wide range of evidentiary and legal disputes in their filings. Some are more difficult to assess than others. This case, like many others in this District, has been pending for several years. AMR's motion itself was filed more than a year ago. Despite these delays, a district court's goal is always to employ the Federal Rules in the way that will lead to the most "just, speedy, and inexpensive determination" that is possible in the circumstances. Fed. R. Civ. P. 1. This order is

accordingly limited strictly to only the evidence and the arguments that are necessary for a ruling. When the record and the issues are limited in this way, no material facts are disputed.

Kjelstrom is a military veteran and an experienced paramedic who has been with AMR for more than twenty years. (Doc. 44-2 at 2.) Since 2015, he has worked full-time as a "community paramedic." (*Id.*) Community paramedics respond to emergency calls in specially equipped SUVs that the company refers to as "quick response vehicles." (*Id.* at 3.) And so, ordinarily, Kjelstrom does not drive a traditional ambulance and does not transport patients. (*Id.*) Sometimes he picks up additional shifts with on more traditional two-person ambulance crews, and when he does, he may need to help transport and care for patients in medical emergencies. (*See id.* at 3–4.)

Kjelstrom uses a specially trained service dog to help him manage the symptoms of post-traumatic stress disorder. (*Id.* at 4.) He began bringing his service dog to work many years ago, in August 2015. (*Id.*) When the company's regional director and human resources manager eventually learned that he was doing this in 2017, they spoke with him about his condition and whether he needed accommodation. (*Id.* at 4–5.) They decided he could bring his service dog with him in the quick response vehicle he uses for work as a community paramedic, but they would not allow his service dog to ride along with him and his coworkers in ambulances, when it might be necessary to transport patients. (*Id.* at 5, 7.) Ever since then, AMR has always allowed Kjelstrom to bring his service dog with him in the quick response vehicle when he works as a community paramedic. (*Id.* at 6.) The company has also exempted him from the otherwise mandatory shift requirements that would require occasional work in an ambulance, i.e., that would prevent him from having his service dog with him. (*Id.*)

A few years after Kjelstrom and AMR originally made these arrangements, he began working with a new service dog. (*See id.* at 7.) When he brought this up with the local human resources manager, she said that he could continue bringing his new service dog with him when he worked as a community paramedic, but as before, not when he picked up shifts on ambulance crews. (*See id.* at 7.) Kjelstrom asked her to reconsider. (*Id.*) He met again with the regional director and human resources manager, and he spoke with a more senior human resources

executive. (*See id.* at 8–9.) The company decided in the end that it would stand by the accommodation it had previously offered: it would not allow Kjelstrom to bring his service dog with him in transport ambulances, citing potential health and safety concerns, but it would permit him to bring his service dog with him in his quick response vehicle when he works as a community paramedic. (*Id.* at 7–10, 12.)

Kjelstrom filed this case after the company made that decision. (*See* Doc. 1-1.) He contends the restriction on the use of his service dog is discriminatory and thus violates the California Fair Employment and Housing Act and the federal Americans with Disabilities Act. (*See* Doc. 41-1 at 18–20, 27–29.) He also alleges AMR fell short of its obligations under the FEHA to engage with him in an interactive process to find a reasonable accommodation for his disability, to offer him reasonable accommodations, and to prevent discrimination. (*See id.* at 20–27.) Finally, he alleges the company negligently supervised his supervisors and its human resources representatives in violation of California common law. (*See id.* at 29–31.) AMR moves for summary judgment. (Doc. 44.) The Court determined that oral arguments would not be necessary.

**DISCUSSION**

A district court can grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court takes the evidence in the light most favorable to the party who opposes the motion and draws justifiable inferences in that party's favor. *See id.* at 255.

**I. Reasonable Accommodation and Interactive Process**

AMR and Kjelstrom both begin with his claim that the company did not offer him a reasonable accommodation in violation of the FEHA. The Court will do the same. The statutory language is straightforward: "It is an unlawful employment practice . . . [f]or an employer . . . to

fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov't Code § 12940(m)(1). This language makes clear that Kjelstrom could prove AMR is liable under this provision at trial only by showing (among other things) that AMR did not make a reasonable accommodation for his disability. *See Hernandez v. Rancho Santiago Cmty. Coll. Dist.*, 22 Cal. App. 5th 1187, 1193–94 (2018). ARM argues that it has made a reasonable accommodation. (*See* Doc. 44-1 at 21–22.)

The FEHA does not define the phrase "reasonable accommodation" directly, but it does offer examples of the types of accommodations that can be reasonable, such as restructuring the job, offering part-time work and modified schedules, and reassignments to vacant positions. Cal. Gov't Code § 12926(p). California appellate courts have generally understood "reasonable accommodations" as modifications or adjustments to the workplace that allow an employee to "perform the essential functions of the job held or desired." *E.g.*, *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 974 (2008). State regulations offer a similar definition. For existing employees, reasonable accommodation are "modifications or adjustments" that are "effective in enabling" the employee to either "perform the essential functions of the job" or "to enjoy equivalent benefits and privileges of employment as are enjoyed by similarly situated employees without disabilities." Cal. Code Regs. tit. 2, § 11065(p)(1).

The regulations also offer examples. *Id.* at § 11065(p)(2). One is directly relevant here: it may be reasonable for an employer to allow a disabled employee to bring an "assistive animal" work, such as a trained service dog. *Id.* § 11065(a)(1)(C), (p)(2)(B); *see also* Cal. Civ. Code § 54.1(a)(6)(C)(iii). AMR argues that it offered Kjelstrom exactly this accommodation. (*See* Doc. 44-1 at 21–22.) It has also cited undisputed evidence to support its position. As summarized above, AMR allowed Kjelstrom to bring his service dog with him to work as a community paramedic, it permitted him to keep his service dog with him in his quick response vehicle, and it excused him from mandatory shifts in transport ambulances, where it was unwilling to permit a service dog.

Kjelstrom does not deny that AMR offers him these accommodations. He does not explain why they are unreasonable or ineffective in ensuring that he can fulfill his duties as a

community paramedic. (*See* Doc. 48 at 11–14.) He argues that a jury could decide that a broader accommodation would be no less reasonable, i.e., permission to bring his service dog with him on transport ambulances, just as he does in the quick response vehicle. (*See* Docs. 44-2 at 9; Doc. 48 at 6.) That may be true, but an "employer is not obligated to choose the best accommodation or the accommodation the employee seeks." *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 228 (1999). Employers have "discretion to choose between effective accommodations." *Id.* (citation and quotation marks omitted). They "may choose the less expensive accommodation" or the one that is "easier" to provide. *Id.* (citation and quotation marks omitted).

In *Hanson*, for example, the plaintiff had injured his hand and wrist while working as a meatcutter. *See id.* at 220. His doctors restricted him from continuing in that job, so his employer permitted him to take a leave of absence, then offered him a part-time job that fit his restrictions. *See id.* at 227. It paid less and came with fewer benefits, but he was not qualified for any other open positions. *See id.* at 220, 227. When he refused the company's offer, he was fired, and he argued that his employer had acted unreasonably. *See id.* at 227. He asserted that his employer could and should have done more, such as giving him a hand brace and ergonomic knives, excusing him from heavy lifting, and allowing him more time to build up his skill with his non-dominant hand. *See id.* The Court of Appeal upheld the trial court's decision to grant summary judgment to the employer. *See id.* at 227–28. The employer had offered two other reasonable and effective accommodations (his leave of absence and the part-time job). *See id.* at 228. The FEHA did not require more. *See id.*

Federal district courts in California have often followed this reasoning in similar cases. In one case, the plaintiff was working for a company in the business of collecting and disposing of medical waste, and he developed anxiety and other health problems related to the risk of accidental needle sticks. *See Johnson v. Sterilmed, Inc.*, No. 14-1532, 2015 WL 13918815, at *3–4 (C.D. Cal. May 18, 2015). He argued that his employer should have threatened a particular customer that it would terminate its account if it continued disposing of used needles incorrectly. *See id.* at *12–13. The employer decided instead to excuse the plaintiff from performing the duties that exposed him to the risk of accidental needle sticks. *See id.* at *13. This was

determined to be a reasonable accommodation even though it was not the one that the employee preferred. *See id.* In another similar case, the district court decided the employer had reasonably accommodated its employee's driving difficulties by allowing occasional remote work and a flexible schedule, despite the employee's preference for completely remote work. *See Limon v. Am. Red Cross*, No. 09-07355, 2010 WL 11507857, at *18 (C.D. Cal. Oct. 6, 2010). A third example is the district court's order in *Houston v. Regents of University of California*, No. 04-4443, 2006 WL 1141238 (N.D. Cal. May 1, 2006). The employee requested a transfer to a different job under a new supervisor as to accommodate work-related stress and other health problems, but the district court decided that the employer had complied with the FEHA by offering a leave of absence, reduced hours, and a lighter workload instead. *See* No. 04-4443, 2006 WL 1141238, at *29 (N.D. Cal. May 1, 2006).

By this reasoning, Kjelstrom cannot prevail at trial by arguing that AMR should have offered him the more expansive accommodation he prefers. AMR permits Kjelstrom to bring his service dog with him in his quick response vehicle, and Kjelstrom has not cited evidence that could show this accommodation is unreasonable or ineffective. In these circumstances, AMR is entitled to summary judgment on Kjelstrom's claim for failure to accommodate.

Because AMR offered a reasonable accommodation, Kjelstrom cannot prove that AMR fell short of its obligation to engage in good faith in the interactive process. *See Watkins v. Ameripride Servs.*, 375 F.3d 821, 829 n.5 (9th Cir. 2004); *Hanson*, 74 Cal. App. 4th at 229. It is therefore unnecessary to decide whether Kjelstrom's preferred accommodation is reasonable, whether it would cause undue hardship, *see Soldinger v. Nw. Airlines, Inc.*, 51 Cal. App. 4th 345, 370 (1996), and if not, whether AMR could mount a successful defense based on the statute of limitations (*See* Doc. 44-1 at 19–20). AMR's motion for summary judgment of claims two and three is therefore granted.

## II. Disability Discrimination

California courts have adopted the three-part "*McDonnell Douglas* burden-shifting framework" to try cases in which a plaintiff alleges an employer treated him differently because of a protected characteristic, such as a disability. *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d

1139, 1145 (9th Cir. 2017) (citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000), *in turn citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). At trial, it is first for the plaintiff to make out a "prima facie case" of discrimination by showing he had a "disability" (or was regarded as having such a disability), could perform his essential job duties (with a reasonable accommodation if necessary), and was subject to some "adverse employment action" because of the disability (or perceived disability). *E.g.*, *Price v. Victor Valley Union High Sch. Dist.*, 85 Cal. App. 5th 231, 239 (2022). If the employee proves this prima facie case, then the burden shifts to the employer, whose obligation it is to come forward with evidence that its decision was legitimate, not discriminatory. *See id.* at 244. If it offers that evidence, then the burden shifts back to the employee, who can prevail by persuading the fact finder that the employer's reason is a pretext or is not to be believed. *See id.*

AMR is willing to concede for now that Kjelstrom could make out a prima facie case of disability discrimination at trial. (Doc. 44-1 at 28.) It argues that it is entitled to summary judgment because it will offer a legitimate, nondiscriminatory reason for its decision that Kjelstrom cannot refute, i.e., that it was unwilling to allow his service dog to ride along in the ambulance due to its concerns about patients' health and safety. (*See id.*) The relevant evidence is undisputed:

- AMR's ambulances have very little extra space. (Doc. 44-2 at 10, 13.) It is difficult to find a safe and secure place for service dog to ride inside an ambulance, and if Kjelstrom's service dog is with him, it may not be possible to bring another rider whose presence may be necessary, such as a firefighter. (*See id.* at 10, 14.) In some urgent situations, Kjelstrom's service dog might even need to share the back of the ambulance with a patient in critical condition, which may make it more difficult to provide necessary care. (*See id.* at 11, 12, 14–16.)
- It is possible that some patients who are afraid of or allergic to dogs might not be able to say so, for example because they are unconscious or nervous, and this may make it more difficult to care for these patients. (*See id.* at 12, 14, 15–16.)
- Even well-trained service animals like Kjelstrom's service dog are not prepared

specifically to ride in ambulances in stressful, tense, and unpredictable emergency situations. (*See id.* at 7, 15.)

- AMR is concerned that a service dog may cause distractions in medical emergencies, when even a few seconds' delay can have significant consequences for a patient's health and well-being. (*See id.* at 13, 17.)
- If Kjelstrom brought a service dog with him in an ambulance, he might sometimes need to leave it unattended for a long time. (*See id.* at 12, 16.)
- Managers raised concerns about these types of risks during internal discussions as early as 2017. (*Id.* at 12.) They have also consistently referred to health and safety concerns when it has explained its decision to Kjelstrom. (*See id.* at 7–10.)

AMR could rely on this undisputed evidence at trial to show that its decision was based on legitimate rather than discriminatory concerns. In response, Kjelstrom has not cited evidence that could show that these concerns are mere pretext—that discrimination is lurking behind them. He believes AMR's concerns are unfounded, and he points out that he brought his service dog with him during ambulance shifts for several months without issue, before it came to the attention of management. (*See* Doc. 48 at 22.) He also questions the thoroughness of the company's investigation and its decision not to assess his own service dogs' training and abilities individually. (*See id.* at 16–18.)

AMR may very well have acted unwisely. It may have assessed the risks incorrectly. But proof along those lines would not suffice. An employer may rely on "a good reason, a bad reason, a reason based on erroneous facts," or it may have "no reason at all, as long as its action is not for a discriminatory reason." *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 344 (2008) (citation omitted). "The employer's stated legitimate reason does not have to be a reason that the judge or jurors would act on or approve." *Id.* (citation and alterations omitted). "[T]he relevant question is whether the given reason was a pretext for illegal discrimination." *Id.* (citation and alterations omitted). The evidence here reveals no "genuine dispute of material fact" that would necessitate a trial. AMR's motion for summary judgment of claim one is therefore granted.

///

**III. Other Claims**

Kjelstrom's claims for failure to prevent discrimination and for negligent supervision (numbers four and six, respectively) are derivative of the other state law claims above. AMR is therefore entitled to summary judgment of these claims.

Claim five is based on the federal ADA. Kjelstrom does not advance independent arguments related to his ADA claim in opposition to AMR's motion, and he does not disagree with AMR that his ADA claim is equivalent to his FEHA claims. The federal and state claims are indeed equivalent in these circumstances. *See, e.g.*, *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002) (defining "reasonable accommodation" under the ADA); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (discussing elements of a disability discrimination case under the ADA); *Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1091–99 (E.D. Cal. 2017) (analyzing similar ADA and FEHA claims for discrimination, failure to make reasonable accommodations, and failure to engage in the interactive process in conjunction). AMR is therefore also entitled to summary judgment of claim five.

**CONCLUSION**

The motion for summary judgment (Doc. 44) is **GRANTED**. The Clerk's Office is directed to enter judgment for the defense and to close this case.

IT IS SO ORDERED.

Dated: September 28, 2026

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE